UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Shephard Madison Smith,

        Plaintiff,

vs.                                                         Case No. 3:09-cv-655-J-32MCR

Commissioner of Social Security,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

**I.     PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability and disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on December 5, 2005. (Tr. 57, 59, 130-32, 135-37, 155). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (Tr. 65-66, 68-69, 77-81). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on October 2, 2008. (Tr. 82). On November 12, 2008, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 9-17). The Appeals Council denied Plaintiff's

---

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

request for review, thus making the ALJ's November 12, 2008 decision the final decision of the Commissioner. (Tr. 1-3, 5). Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since June 1, 2005, due to bipolar disorder and schizophrenia. (Tr. 130, 135, 160).

### B.     Summary of Evidence Before the ALJ

Plaintiff was 29 years old at the time of the ALJ's decision on November 12, 2008. (Tr. 17, 21). Plaintiff received his General Equivalency Diploma ("GED") and has past relevant work experience as a fast food worker, an animal attendant, and an automobile rental clerk. (Tr. 21, 29). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[2]

Plaintiff's treating physician, Dr. Michael L. Solloway, M.D., began treating Plaintiff for his mental impairments in 2005 on an inpatient and outpatient basis. (Tr. 464). On June 12, 2007, Dr. Solloway noted Plaintiff was looking forward to going to South Dakota for 3 months to work as a ranch hand on his father's ranch. (Tr. 486). On September 4, 2007, Dr. Solloway noted Plaintiff had returned from South Dakota and was healthy and sleeping well. (Tr. 485). On October 23, 2007, Dr. Solloway noted

---

[2] The Court will focus primarily on the records from Dr. Michael Solloway, M.D. and Dr. Jerry Valente, Ph.D., as they are mainly at issue here. See (Docs. 11, 14).

Plaintiff was "not depressed." (Tr. 482). On November 13, 2007, Dr. Solloway noted Plaintiff was "doing well." (Tr. 481).

On November 27, 2007, Dr. Solloway completed a Mental Impairment Questionnaire of Plaintiff. (Tr. 464-67). Dr. Solloway opined Plaintiff suffered from marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace;[3] and 3 episodes of decompensation within 12 months, each at least 2 weeks duration. (Tr. 466). Dr. Solloway further found Plaintiff had a residual disease process that resulted in marginal adjustment and even a minimal increase in mental demands or change in the environment would cause Plaintiff to decompensate. Dr. Solloway expected Plaintiff's impairment would cause him to be absent from work at least 4 days per month. (Tr. 467).

On November 29, 2006, state agency psychological consultant Dr. Carol Deatrick, Ph.D. performed an assessment of Plaintiff. (Tr. 433-38). Dr. Deatrick opined Plaintiff was able to return to driving, his mental condition was fairly stable with medication, and Plaintiff was capable of performing simple tasks. (Tr. 433-38). Dr. Deatrick concluded Plaintiff suffered from moderate mental limitations and was capable

---

[3] Per the Questionnaire, "marked" means more than moderate but less than extreme and must be of such degree to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis. The Questionnaire defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." (Tr. 466).

of performing simple tasks with some reduction of public contact. (Tr. 435-38). Similarly, state agency medical expert, Dr. Alan Harris, Ph.D., opined Plaintiff suffered moderate mental limitations. (Tr. 453-56).

In June 2008, Dr. Jerry Valente, Ph.D. performed a one-time, consultative psychological evaluation of Plaintiff. (Tr. 487-94). Dr. Valente indicated Plaintiff's thought processes revealed no loosening of associations or evidence of delusions. (Tr. 488). Dr. Valente indicated Plaintiff was able to dress, groom, and feed himself without assistance and that he was able to complete light household chores such as folding clothes, washing dishes, taking out the trash, and making his bed. (Tr. 493). Plaintiff "appeared stable emotionally and appeared to be responding well to his current medication regimen." (Tr. 494). Dr. Valente opined Plaintiff suffered from mild limitations in his ability to interact appropriately with supervisors, co-workers, and the public, and to respond to changes in the routine work setting. (Tr. 496). Dr. Valente additionally stated that "while [Plaintiff] is currently lucid and exhibiting a positive response to his current psychiatric care, his disorder is, in fact, characterized by periods of unexpected, sudden decompensation during which [Plaintiff]'s judgment, reasoning, and global cognitive functioning is significantly impaired." (Tr. 494).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 11). At step two, the ALJ found Plaintiff had the following severe impairments: bipolar disorder and schizoaffective disorder. (Tr. 11-12). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 13). The ALJ

further determined Plaintiff had the residual functional capacity ("RFC")[4] to perform medium work[5] except that he must avoid operation of heavy moving machinery, avoid unusual stress, have limited contact with the public, and have a low stress job. (Tr. 13-16).

At the March 14, 2007 hearing, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypotheticals posed, the VE testified Plaintiff could perform his past relevant work as an animal attendant. (Tr. 16). The ALJ then asked the VE whether a person with Plaintiff's RFC could perform any other jobs existing in significant numbers in the national economy. The VE replied that a person with Plaintiff's RFC could perform work as a custodian, kitchen helper, and stocker, which all exist in significant numbers in the national economy. (Tr. 16-17). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 17).

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th

---

[4] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 CFR §§ 404.1567(c), 416.967(c).

Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.   Issues on Appeal

Plaintiff attempts to raise various arguments in his Memorandum in Opposition to the Commissioner's Decision; however, the vast majority of these arguments have not been developed. See Russell v. Astrue, 2009 U.S. Dist. LEXIS 19393, __ WL __ (M.D. Fla. 2009) ("[T]he plaintiff's failure to develop any argument showing that the law judge

erred ... defeats her claim."); see also Rowe v. Schreiber, 139 F.3d 1381 (11th Cir. 1998) (noting that in the absence of an argument, the issue is deemed abandoned). Indeed, the argument section of Plaintiff's Memorandum consists of slightly over one page of argument.[6] See (Doc. 11, pp. 6-7). Plaintiff's argument section is entitled:

> The Commissioner erred in ignoring the opinions of Dr. Solloway and Dr. Valente, and by not giving full effect to the complete testimony of the plaintiff regarding appropriate psychiatric restrictions and their impact on the plaintiff's ability to perform past relevant work or sustain employment.

(Doc. 11, p. 6). Therefore, the undersigned will address whether the ALJ adequately considered the opinions of Drs. Solloway and Valente and whether the ALJ properly addressed Plaintiff's subjective complaints of psychiatric restrictions.

### 1. Whether the ALJ adequately considered the opinions of Drs. Solloway and Valente.

Plaintiff contends the ALJ did not properly weigh the November 2007 Mental Impairment Questionnaire completed by Plaintiff's treating physician, Dr. Solloway, and the June 2008 consultative examination opinion of Dr. Valente. (Doc. 11, pp. 6-7). In response, the Commissioner contends the ALJ provided good cause for giving little weight to the opinion of Dr. Solloway and giving little weight to a portion of Dr. Valente's opinion. (Doc. 14, pp. 5-13).

In the Mental Impairment Questionnaire, Dr. Solloway opined Plaintiff suffered from marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace;

---

[6]The Court recognizes that portions of Plaintiff's "Statement of Facts" contains brief legal argument; however, the Court finds the analysis is lacking. (Doc. 11, pp. 2-5).

and 3 episodes of decompensation within 12 months, each at least 2 weeks duration. (Tr. 466).  The ALJ gave little weight to these opinions.  (Tr. 15).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  Lewis, 125 F.3d at 1440.  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  MacGregor, 786 F.2d at 1053.  Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  MacGregor, 786 F.2d at 1053.

Here, the ALJ stated that Dr. Solloway's opinions are inconsistent with the medical evidence of record.  (Tr. 15).  In assessing Dr. Solloway's opinion, the ALJ noted that although Dr. Solloway opined Plaintiff would have periods of 3 episodes of

decompensation within 12 months, the treatment records indicated Plaintiff had not exhibited significant episodes of decompensation since 2005.  (Tr. 15, 464-67). Additionally, Plaintiff testified he had not had a period of decompensation since 2005.  (Tr. 14, 53).

The ALJ further noted that although Dr. Solloway opined Plaintiff suffered from marked impairments, Dr. Solloway's own treatments records contradicted the limitations he assessed.  (Tr. 12, 15, 478-86).  Indeed, on June 12, 2007, Dr. Solloway noted that Plaintiff was looking forward to going to South Dakota to work on his father's ranch.  (Tr. 40, 486).  On September 4, 2007, Dr. Solloway noted Plaintiff had returned from South Dakota and was healthy and sleeping well.  (Tr. 485).  On October 23, 2007, Dr. Solloway noted Plaintiff was "not depressed," and on November 13, 2007 was "doing very well."  (Tr. 481-82).  Since the time Plaintiff began treatment with Dr. Solloway, Plaintiff has attended art school, lived alone, performed household chores, and drove a car as needed.  (Tr. 12, 179, 192, 417-18).  Therefore, the Court agrees with the Comissioner's contention that Dr. Solloway's opinions regarding Plaintiff's episodes of decompensation and marked impairments are inconsistent with the medical evidence of record.  See 20 C.F.R. §§ 401.1527(d)(3), 416.927(d)(3).

In Dr. Valente's consultative examination, he opined Plaintiff suffered from mild limitations in his ability to understand, remember, and carry out instructions as well as in his ability to interact appropriately with supervisors, co-workers, and the public, and to respond to changes in the routine work setting.  (Tr. 12, 496).  The ALJ found Dr. Valente's opinion regarding Plaintiff's functioning was consistent with the opinions of the

state agency psychological consultants (Tr. 420-37, 439-56), who concluded Plaintiff had only mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 15, 431, 449).  Therefore, the Court finds the ALJ properly gave great weight to Dr. Valente's opinions regarding Plaintiff's functioning.  (Tr. 15); see also 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f)(2)(I), (iii), 416.912(b)(6), 416.927(f)(2)(I), (iii) (state agency psychological experts are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the record).

On the other hand, the ALJ gave little weight to the portion of Dr. Valente's opinion which he opined that "while [Plaintiff] is currently lucid and exhibiting a positive response to his current psychiatric care, his disorder is, in fact, characterized by periods of unexpected, sudden decompensation during which [Plaintiff]'s judgment, reasoning, and global cognitive functioning is significantly impaired."  (Tr. 494).  The ALJ gave little weight to this assessment because the record showed Plaintiff had not had a period of decompensation since 2005.  (Tr. 15, 319-52).  Therefore, the ALJ accurately concluded that Dr. Valente's opinion regarding Plaintiff's decompensation is inconsistent with the record evidence.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

### 2. Whether the ALJ properly considered Plaintiff's subjective complaints.

Plaintiff argues the ALJ failed to properly consider his testimony regarding psychiatric restrictions and, therefore, erred in finding Plaintiff could return to his past relevant work or engage in other work existing in the national economy.  (Doc. 11, pp. 6-

7).  In response, the Commissioner contends the ALJ properly considered Plaintiff's subjective complaints in assessing his RFC.  (Doc. 14, pp. 13-15).

In this circuit, subjective complaints are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Hale, 831 F.2d at 1012.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he further found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not completely credible.  (Tr. 14).  In particular, the ALJ noted Plaintiff had not been hospitalized since January 2006, despite ongoing treatment for his mental impairments.  (Tr. 14).  Plaintiff's condition had been maintained with medication and therapy, and he had responded well to antipsychotic medication.  (Tr.

14, 410-15, 468-86, 500-03). Additionally, Plaintiff's credibility was further diminished by his inconsistent statements regarding his activities of daily living. (Tr. 15). Plaintiff had attended art school, lived alone, maintained his household, and drove a car. (Tr. 15, 44-45, 47, 130, 135, 417, 493). Furthermore, Plaintiff attempted to return to work on more than one occasion, demonstrating Plaintiff's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. (Tr. 15, 21, 23, 39-41). Accordingly, the Court finds Plaintiff's treatment records and activities of daily living provide substantial evidence to support the ALJ's credibility finding.

Plaintiff further contends that the hypothetical question posed to the VE was defective because it did not "take into account the risk of decompensation and the propensity to miss time from work as described by Plaintiff, Dr. Solloway and Dr. Valente." (Doc. 11, pp. 4-5; Tr. 49-50, 466-67, 494). However, the Court finds this argument without merit as the hypothetical question need only include those functional limitations which the record supports.[7] See 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.

The Court finds the ALJ posed a hypothetical question to the VE which was accurately comprised of all of Plaintiff's impairments and limitations.[8] Therefore, the

---

[7]With respect to the risk of decompensation, the ALJ noted that the medical evidence of record and Plaintiff's testimony showed Plaintiff had not had an episode of decompensation since 2005. (Tr. 14-15, 53). With regard to Plaintiff's propensity to miss work, Plaintiff's RFC was consistent with the state agency reviewing psychologists' opinions who opined that Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances ranged from not significantly limited to only moderate limitations (Tr. 435, 453).

[8]The Court recognizes that Plaintiff's RFC contains a limitation that he avoid unusual stress
(continued...)

ALJ's reliance on the VE's testimony that Plaintiff could perform his past relevant work as well as other work which exists in significant numbers in the national economy was proper. Accordingly, the Court finds the ALJ properly found that Plaintiff was not disabled and this determination is supported by substantial evidence in the record as a whole. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## IV.   CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  14th  day of September, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

---

[8](...continued)
(Tr. 13) and that particular limitation was not made part of the hypothetical question posed to the VE (Tr. 29-33). As an initial matter, the Court notes that Plaintiff does not raise this issue as it was pointed out by the Commissioner. Nonetheless, the Court finds the hypothetical question posed to the VE encompassed all of the limitations in Plaintiff's RFC because it included a requirement of a low-stress work environment, with limited contact with the public (Tr. 29-30).

Copies to:

Counsel of Record
Any Unrepresented Party